**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | |
|---|---|
| **MONA K. SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:04-0658** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for Disabled Widow's Benefits (DWB) under Title II of the

Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States

Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit Proposed

Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Presently pending before the Court are cross-Motions for Judgment on the Pleadings.

The Plaintiff, Mona K. Smith (hereinafter referred to as "Claimant"), filed an application for

DWB on January 9, 2003, alleging disability as of January 1, 1990, due to major depression, panic

attacks, anxiety, chronic bronchitis, asthma, nerve damage right arm, bilateral ganglion cysts

(wrists), numbness right arm, chronic fatigue, degenerative disc disease, severe tremors, history of

a tailbone fracture, ovarian cysts, fibroid tumors, slight heart murmur, and accelerated heart rate. (Tr.

at 50-52, 32, 39.) The claim was denied initially and upon reconsideration. (Tr. at 32-34, 39-41.)

On September 5, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ).

(Tr. at 42.) The hearing was held on December 18, 2003 before the Honorable John T. Yeary. (Tr.

at 241-78.)  By decision dated April 7, 2004, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 8-22.)  The ALJ's decision became the final decision of the Commissioner on May 14, 2004, when the Appeals Council denied Claimant's request for review.  (Tr. at 3-5.)  On June 28, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

To be entitled to DWB, a claimant must establish, among other things, that she is the widow of a fully insured wage earner, that she is unmarried, that she is at least 50 years old but not yet 60 years old, and that she is under a disability that began no later than 7 years after the wage earner's death or 7 years after she was last entitled to Survivor's Benefits. 42 U.S.C. § 402(e)(1); 20 C.F.R. § 404.335 (2004). Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.   Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded

benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  20 C.F.R. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2004).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant met all of the nondisability requirements for DWB. (Tr. at 17, Finding No. 1.) He found that Claimant satisfied the first inquiry under the sequential evaluation because she had not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 17, Finding No. 1.)  Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of bronchitis, back strain, and affective disorder. (Tr. at 13.)  At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 13.)  The ALJ then found that Claimant had a residual functional capacity for a limited range of light work.  (Tr. at 15. ) The ALJ then noted that Claimant had no past relevant work to which she could return. (Tr. at 15.) Nevertheless, the ALJ concluded, on the basis of Vocational Expert testimony, that Claimant could perform jobs such as sewing machine operator and office helper, which existed in significant

numbers in the national economy. (Tr. at 17.) On this basis, benefits were denied.  (Tr. at 17-18.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was born on December 28, 1952, and was 50 years old at the time of the administrative hearing.  (Tr. at 50.)  Claimant completed the tenth grade.  (Tr. at 77.)  In the past, she worked for two months as a hotel maid, but this was not considered substantial gainful activity. (Tr. at 16.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence

4

because the ALJ erred in failing to give "great weight" to the opinions and residual functional capacity assessments of treating physicians Jennifer Boyd, PA-C and Dr. Nadeem Ahmed. (Pl.'s Br. at 2.) The Commissioner asserts that this argument is without merit.

Treating Physicians' RFC

Claimant argues that the ALJ erred in failing to give "great weight" to the opinions and residual functional capacity assessments of Jennifer Boyd and Dr. Nadeem Ahmed, Claimant's treating providers. The Commissioner asserts that this argument is without merit.

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2) (2004). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) (2004). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the

factors listed in 20 C.F.R. § 404.1527.   These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors.   Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."   Id. § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 404.1527(d)(2)(i) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given.   Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Section 404.1527(d)(3), (4), and (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner.  The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s).  Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to [this] subpart . . . , your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. §§ 416.927 (e)(2); 404.1527(e) (2004). The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ." Id. §§ 404.1527(e)(3), 416.927(e)(3). The regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 416.946, 404.1546 (2004.)

In the instant case, ALJ Yeary reviewed and summarized the evidence of record, including the residual functional capacity assessments of Ms. Boyd/Dr. Rogin[1] and Dr. Ahmed. (Tr. at 12-15.) The ALJ gave "no significant weight" to these assessments, however, finding that they were not supported by the evidence of record. (Tr. at 15.)

In July 2003, Dr. Rogin signed off on a treatment note after Claimant was seen at New River Health Association. (Tr. at 139.) Claimant complained of neck pain and the note indicates that she "[i]s here for disability evaluation." (Tr. at 139.) She also complained of back pain and pain in the hands and wrists. (Tr. at 139.) Upon evaluation, Claimant had normal flexion and extension of the neck, and the neck was non-tender on palpation. (Tr. at 139.) She had some back tenderness, but had

---

[1]  Claimant repeatedly refers to this RFC assessment as being completed by Jennifer Boyd, PA-C (physician's assistant). The assessment was also signed by Dr. M. Rogin, who also signed off on the accompanying treatment note. (Tr. at 135-39.) The Court will therefore refer to this assessment as that of Dr. Rogin, noting that a physician's assistant is not an "acceptable medical source" under the Regulations; rather, a physician's assistant's opinion would be considered an opinion of an "other source" which may be used to show the severity of a claimant's impairment and how it affects her ability to work. See 20 C.F.R. § 404.1513(d)(1) (2004).

7

normal rotation, forward flexion and extension, and muscle strength in the extremities was 5/5.[2] (Tr. at 139.) The diagnosis was chronic neck and back pain. (Tr. at 139.) Claimant was prescribed Celebrex and was to follow up in two to three weeks. (Tr. at 139.) On the accompanying RFC form, Dr. Rogin opined that Claimant could lift only 10 pounds occasionally and 5 pounds frequently; could stand/walk only 4 hours per day, 2 hours without interruption; could sit for 3 hours, 1 hour without interruption; could only occasionally perform postural activities but never climb or crawl; was limited in reaching, handling, feeling and pushing/pulling; and should avoid heights, moving machinery, chemicals, dust, fumes, and vibration. (Tr. at 135-38.) When asked for the medical findings to support each assessment, Dr. Rogin simply wrote "see note." (Tr. at 135-38.)

The ALJ afforded no significant weight to this assessment as it was unsupported by the evidence of record. (Tr. at 15.) The ALJ noted Claimant's treatment for breathing problems, back pain and neck pain at New River Health Center. (Tr. at 12.) In June 2002, Claimant reported doing fairly well after the death of her husband two months before. (Tr. at 171.) She had chronic neck pain which she attributed to being less active than usual. (Tr. at 171.) In August 2002, she reported that her anxiety and nervousness were better and her depression had improved significantly. (Tr. at 169.) She was to return in 2 months, or earlier if needed. (Tr. at 169.) Claimant was diagnosed with bronchitis in September 2002 and was advised to stop smoking. (Tr. at 166.) In November 2002, Claimant continued to complain of neck pain which caused her difficulty sleeping. (Tr. at 160.) Her neck was stiff on examination and she was given ibuprofen. (Tr. at 160.) On January 14, 2003,

---

[2] Muscle strength is sometimes assessed on a scale of 0 to 5, with 0 indicating no movement, 1 indicating trace movement, 2 indicating movement with the aid of gravity, 3 indicating movement against gravity but not resistance, 4 indicating movement against resistance supplied by the examiner, and 5 indicating normal strength. The Merck Manual of Diagnosis and Therapy 1347 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999).

Claimant noted that she spent time caring for her elderly parents who lived nearby and visited with her husband's cousin. (Tr. at 152-53.) In February 2003, Claimant continued to complain of neck pain but stated that she had been doing fairly well and felt that she was getting over the loss of her husband. (Tr. at 148.) An April 2003 progress note indicates that Claimant was staying busy babysitting her grandchildren and working in the yard. (Tr. at 140.)

The ALJ noted Claimant's various daily activities, which included washing dishes, keeping her grandchildren two nights per week for two hours; visiting with family; doing household chores; caring for her parents; and driving. (Tr. at 15, 88-91, 248, 258-61.) The ALJ noted that Claimant took only ibuprofen for her back pain. (Tr. at 253.) Additionally, Claimant testified that she sometimes walked for exercise and could walk up to a half mile or the length of a football field without stopping. (Tr. at 260-61.) She further testified that she could lift 25 pounds if she had to. (Tr. at 261.) Further, as the ALJ noted, two state agency physicians reviewed the record and completed Physical Residual Functional Capacity Assessments, opining that Claimant could perform at least medium level work. (Tr. at 15, 103-110, 213-19.) One of these physicians, Dr. Go, stated that Dr. Rogin's "severe physical restrictions to sedentary work" were not supported by the other evidence of record. (Tr. at 219.) As the ALJ found, all of this evidence is inconsistent with Dr. Rogin's severe limitations, including Claimant's own testimony of what she could do. Further, the ALJ gave Claimant some credibility by limiting her to light work, which was more restrictive than the limitations placed by the state agency physicians. (Tr. at 15.)

With regard to Claimant's mental impairments, the ALJ summarized her treatment at New River Health Center. (Tr. at 13.) As previously noted, Claimant's husband died unexpectedly in April 2002, after which she suffered from depression. (Tr. at 50.) By May 2002, Claimant reported

9

some improvement. (Tr. at 172-74.) In August 2002, Claimant reported that her anxiety and nervousness were better and that her depression had improved significantly. (Tr. at 169.) In February 2003, Claimant reported that she felt that she was getting over the loss of her husband and stated that she was doing laundry for her parents and visiting her husband's cousin in Lewisburg. (Tr. at 146.) Claimant's treating psychiatrist, Dr. Ahmed, reported in March 2003 that Claimant was doing much better, denied any complaints, and had no side effects from medication. (Tr. at 144.) Dr. Ahmed stated that it seemed Claimant had been doing "very well" and she would follow up in two months, earlier if needed. (Tr. at 144.) Also in March 2003, Claimant told her counselor that she was feeling better, had enjoyed the weekend with her son, was going to learn to use a riding lawnmower, and had a more positive outlook. (Tr. at 142.) She noted that her anniversary had been the Saturday prior, and that although it was on her mind, she was able to enjoy herself. (Tr. at 142.)

In July 2003, Dr. Ahmed completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) regarding Claimant. (Tr. at 131-33.) Dr. Ahmed opined that Claimant had a "poor" (seriously limited but not precluded) ability to perform in the majority of areas, including relating to co-workers, using judgment, maintaining personal appearance, and relating predictably in social situations. (Tr. at 131-32.) When asked to describe any limitations and include clinical findings to support such limitations, Dr. Ahmed wrote "limited." (Tr. at 133.)

The ALJ found that this assessment was not supported by the evidence of record. (Tr. at 15.) The evidence previously noted regarding Claimant's daily activities, including caring for her grandchildren and visiting with her husband's cousin, belies Dr. Ahmed's assessment, as does the fact that Claimant had a boyfriend in June 2003. (Tr. at 140, 225.) In March 2003, Claimant was doing much better and denied any complaints. (Tr. at 144.) Despite Dr. Ahmed's opinion that

Claimant had a "poor" ability to maintain her personal appearance, treatment notes from Dr. Ahmed himself show that Claimant always appeared with good hygiene and good grooming. (Tr. at 144, 148, 169, 170, 174, 175, 224.) In May 2003, a state agency psychologist reviewed the record and found that Claimant was not significantly limited in most areas. (Tr. at 112-14.) The psychologist found that Claimant could perform a wide range of work activities, although she "may have limitations in the ability to interact with the general public." (Tr. at 114.) Another state agency psychologist reviewed the record and opined in August 2003 that Claimant did not have a severe mental impairment. (Tr. at 193, 205.) He noted that Claimant had shown improvement and that her activities of daily living were within normal limits. (Tr. at 205.)

Based upon the foregoing, the ALJ properly concluded that the RFC assessments of Claimant's treating physicians were not supported by the evidence of record. The ALJ made a proper determination of Claimant's residual functional capacity in accordance with the applicable law and Regulations. Accordingly, Claimant's argument is without merit.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation

within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: April 21, 2005.

R. Clarke VanDervort
United States Magistrate Judge